STATE, Respondent, vs. RICKABY, Appellant.

*March 8—April 2, 1929.*

552

The cause was submitted for the appellant on the brief of *Earl P. Finch* of Oshkosh, and for the respondent on that of *Lloyd D. Smith,* district attorney of Waupaca county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general.

DOERFLER, J.  The defendant was charged in the information with having on the 3d day of April, 1927, in the county of Waupaca, violated the liquor laws, in unlawfully having in his possession privately manufactured distilled intoxicating liquor.  In other counts in the information he was further charged with two prior convictions upon similar charges.  Upon the trial the defendant was convicted by a jury of the violation above referred to, which occurred on the 3d day of April, 1927, and subsequent proof was introduced establishing his prior convictions upon the other counts in the information.  The court thereupon imposed sentence, to the effect that the defendant be punished by confinement at hard labor in the state prison for an indeterminate term of from two to three years, the first ten days of said imprisonment to be in solitary confinement.  After verdict the defendant moved for a new trial upon the ground of newly-discovered evidence, and defendant's first assignment of error is based upon the refusal of the court to grant such new trial upon that ground.

Before considering the application for a new trial on the

ground aforesaid, it will be necessary to review briefly the material and substantial evidence adduced upon the trial. One Timm was the owner of and occupied the premises adjacent to those occupied by the defendant Rickaby. On the day in question one Millard, the undersheriff of said county, and the district attorney thereof, proceeded onto the Timm land to ascertain whether the defendant had stored thereon privately distilled intoxicating liquor, and whether he operated a still in that vicinity. About fifteen feet from the dividing line of the land occupied by Rickaby and that of Timm, and on the land of the latter, there was found hidden behind a stump a sack containing a two-gallon jug of moonshine. This discovery was made at about 6:30 o'clock in the evening, and, anticipating that some one, under cover of darkness, would resort to the place of the discovery in order to take possession of part or all of this liquor, they assumed a concealed position about two rods from the stump. About a quarter of an hour before eight o'clock it was observed that a person proceeded from the Rickaby house towards the stump; that he took the jug of moonshine from the sack and proceeded to fill a bottle from the contents thereof. Thereupon the undersheriff and the district attorney proceeded towards the stump, and the undersheriff made an exclamation to the effect that the person who had removed the liquor was under arrest, whereupon the person with the liquor attempted to make his escape, and in doing so ran towards the dividing line of the two premises above referred to, along which there was a hedge of blackberry bushes about five feet in height. During the period of such attempted escape the undersheriff, who possessed a flashlight, followed the escaping party into the blackberry bushes. Both the undersheriff and the escaping party were entangled in the hedge, and the offender, who first succeeded in releasing himself from such entanglement, escaped. Before the person with the liquor extricated himself from the bushes,

the undersheriff, while a distance of about three feet from him and at a time while his flashlight was thrown upon the escaping party, discovered that the latter was Rickaby. The undersheriff had known Rickaby for some time prior to the happening of this incident, and on the witness stand positively testified that he identified Rickaby.

The district attorney and the undersheriff then entered the Rickaby home, where they found one Adolph Johnson, who had been residing with Rickaby in the latter's home, and a number of other persons, all of whom were apparently under the influence of liquor. The undersheriff testified that Johnson was so intoxicated that he could only walk with great difficulty.

The undersheriff thereupon, in search for further evidence, returned to the place in the blackberry shrubbery through which the defendant had passed, and there found a cap which was subsequently identified to be one belonging to and worn by the defendant Rickaby. The bottle of moonshine was also discovered at this point, and a flashlight was found which witnesses testified was similar to an instrument of that kind owned and possessed by the defendant.

In addition there was testimony of one Looker, a disinterested witness, to the effect that on April 4, 1927, he found Rickaby's face was badly scratched and that these scratches appeared to be of recent origin. The undersheriff testified that in endeavoring to pass through the blackberry hedge he had also received numerous scratches, both upon his face and on his hands.

Rickaby's defense consisted of an *alibi,* which was supported by the testimony of one John Behm and his wife, that at the time when this alleged discovery of illicit liquor was made he was at their home and made inquiry with respect to another farm which he intended to rent; that he arrived at their home between six and seven o'clock in the evening, and did not leave there until after nine o'clock of that day.

In support of a motion for a new trial there was submitted the affidavit of Adolph Johnson aforesaid, in which the affiant averred that the person found in possession of the liquor on the evening of April 3d was none other than himself. There were also submitted the affidavits of Alfred Nowak, Ervin Nowak, Arthur Nowak, and Henry Gollnick, who averred that one Carl Buehler (who testified as a witness in the case that at or about the hour of 8:30 in the evening of the 3d day of April he was seated in his automobile in front of the Rickaby home and that he did not observe any one entering such home) had spent a part of the morning and the entire afternoon and the evening up to midnight of that day at the home of the Nowak family, situated some distance from the Rickaby home. Counter affidavits were submitted by Ronald Buehler and Florence Rusch, in which it was stated that Carl Buehler left the Nowak home in time to have reached the Rickaby home at 8:30 o'clock in the evening.

A careful reading of the record in this case convinces us that the denial of a new trial by the court was fully warranted. There was direct evidence in the case establishing the defendant's identity, which evidence was strongly supported by circumstantial evidence. The affiants who swore that Carl Buehler was at the home of the Nowaks on the evening of the day in question at the hour of about 8 or 8:30, giving the affiants the benefit of good faith, could readily have been mistaken; and the correctness of their testimony is strongly involved in doubt when we consider the counter affidavits filed upon the subject. Ordinarily the testimony of one like Johnson, who now charges himself with the commission of the offense, is of strong probative force. However, it appears from the evidence that Johnson at the time the undersheriff entered the defendant's home was there found in a grossly intoxicated condition, which reflects grave doubt as to his ability to escape with the speed and in the manner as was testified to by the undersheriff.

Furthermore, no scratches were detected upon the person of Mr. Johnson. Johnson had never been convicted of a violation of the prohibition laws, and in view of the close and friendly relations existing between him and the defendant, this fact furnishes a motive for the confession, for his offense, being a first offense, would not be punishable as severely as was that of the defendant. Furthermore, Johnson, being a resident of the defendant's home, did not make a disclosure of his alleged commission of the offense until after the conviction of the defendant.

In view of the convincing evidence adduced at the trial, and the counter affidavits submitted by the State, the court was fully justified in arriving at the conclusion which he did when he denied the motion for a new trial.

A motion for a new trial on newly-discovered evidence is addressed largely to the sound discretion of the court. *Walata v. State,* 180 Wis. 646, 193 N. W. 61.

The defendant in his second assignment of error urges that the court erred in sentencing the defendant to solitary confinement. Such sentence was authorized under the provisions of sec. 4731 of the Statutes of 1898, but such section was repealed by ch. 359 of the Laws of 1925, and in place thereof a new section known as sec. 359.05 was enacted. Sec. 359.05 does not provide for solitary confinement. It is conceded by counsel for the State that the provision in the sentence for solitary confinement is unauthorized in this case.

Under the provisions of sec. 274.35, Stats., this court may modify the judgment of the court below by eliminating therefrom that portion contained therein having reference to solitary confinement.

*By the Court.*—The judgment of the lower court is modified so as to eliminate therefrom the provision for solitary confinement, and as so modified is affirmed; and the cause is remanded with directions for further proceedings according to law.